SILAS BENT, RECEIVER, Appellant, *v.* OLIVER A. HART, Respondent.

### March 29, 1881.

1. A stockholder owns only a right or share in the proceeds or profits of the stock, proportioned to the amount of his contribution, together with the ultimate right to receive back his contribution, or so much thereof as may remain upon a dissolution of the corporation, which right he may transfer to a third person without impairing any right of a creditor of the corporation.

2. That the stockholder sells his stock for more than its value is no ground for attacking the sale at the instance of a receiver of the corporation.

3. A stockholder who has paid his stock in full may, in the absence of fraud, return his stock to the corporation and receive therefor a cash consideration.

4. Where, pending proceedings to wind up an insurance company, of which the stockholders have notice, this company, in consideration of a transfer of all its assets, is reinsured by another company, which contracts to pay the shareholders of the reinsured company their stock in full, provided said stock be exchanged for an equal amount of stock in the reinsuring company; and a stockholder makes this exchange of stock and the reinsured company is afterwards adjudged insolvent, these facts do not show a cause of action against the stockholder at the suit of the receiver of the reinsured company.

APPEAL from the St. Louis Circuit Court, BOYLE, J. *Affirmed.*

THOMAS T. GANTT and JOHN M. GLOVER, for the appellant: The capital stock of a corporation is a trust-fund for the payment of its creditors. — *Munna* v. *Potomac Co.*, 8 Pet. 281; *Wright* v. *Petrie*, 1 Smed. & M. 319; *Nevitt* v. *Bank*, 6 Smed. & M. 513; *Hightower* v. *Thornton*, 8 Geo. 493; *Nathan* v. *Whitlock*, 3 Edw. Ch. 215; *Vose* v. *Grant*, 15 Mass. 476. In the absence of statute or charter power, the stock cannot be divided among the stockholders, even though the corporation be solvent, except upon the final winding up of its affairs for the purpose of ceasing business. — *Mather* v. *Bates*, 2 N. Y. Leg. Obs. 213; *Pettibone* v. *Van Rensolaer*, Id. 210; *Payne* v. *Bullard*, 3

Mason, 308; *Powell R. Co.* v. *King*, 17 Ohio St. 534. Though there be such a statutory or charter power, if the corporation makes a dividend of its capital stock among its shareholders, not leaving corporate funds enough to pay outstanding debts, the receiving shareholder can be compelled to refund for the benefit of creditors. — *Scott* v. *Eagle Fire Ins. Co.*, 7 Paige, 198; *Bedford R. Co.* v. *Bowen*, 48 Pa. St. 28; 5 Smed. & M. 428; *Mann* v. *Pents*, 2 Sandf. Ch. 257; *Lauman* v. *Lehigh Valley R. Co.*, 30 Pa. St. 42; *Bank St. Mary's* v. *St. John*, 25 Ala. 566; *Wood* v. *Dummer*, 3 Mason, 308. Equity will follow the trust-fund or its proceeds into whatsoever hands it comes, except those of a purchaser without notice for value, and compel its application to the payment of the corporate debts. — 2 Story's Eq. Pl. 1252; Ang. & Ames on Corp. 540–546; 1 Kid on Corp. 273; *Briggs* v. *Penniman*, 8 Cow. 387; *Slee* v. *Bloom*, 19 Johns. 456; *Haslet* v. *Witherspoon*, 2 Rich. Eq. 395; *Allen* v. *Montgomery R. Co.*, 11 Ala. 437; *Caldwell* v. *Montgomery*, Talbott. Pamph. (Stat. Lim.) 106; *Thomas* v. *Brinefield*, 7 Ga. 154. It does not follow that because the transfer to the Mound City has not been set aside and is not alleged in this petition to be invalid, that the plaintiff cannot recover of the defendant. — *Chase* v. *Walker*, 26 Me. 555; *Prince* v. *Shephard*, 9 Pick. 176.

H. A. & C. A. CLOVER, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

The petition alleges that the St. Louis Mutual Life Insurance Company, a corporation, had a capital stock of one thousand shares of $100 each, of which, on December 13, 1873, the defendant held fifty-five; that the corporation was insolvent; that a proceeding, begun October 6, 1873, by the State superintendent of insurance to wind up the company, was then pending. Of all of which defendant had notice.

That on the first-named date, the Mound City, a corporation, reinsured all the risks of the St. Louis Mutual for the sole consideration of a transfer of all its (the St. Louis Mutual) assets, which full transfer the Mound City Life Insurance Company received. On its part, the Mound City, besides reinsuring the risks of the St. Louis Mutual, contracted to pay to each shareholder of the St. Louis Mutual his stock in full, provided he first exchanged that stock for an equal amount of Mound City stock within a set time, and then demanded its redemption of the Mound City within a specified period; that the defendant exchanged his stock, and demanded and received his $5,500 under the contract; that the St. Louis Mutual was adjudged insolvent February 15, 1877, and Silas Bent, plaintiff, appointed sole receiver; that the assets of the company will not pay its liabilities by a half million dollars, and that the Mound City is also insolvent, and cannot pay any part of this deficit.

The petition prays that the defendant may be ordered to pay to him the said sum of $5,500 so received in redemption of his stock. The defendant demurred to this petition upon the ground that it did not state a cause of action. The court below sustained the demurrer, and the case comes up on the propriety of that ruling.

It is contended for the plaintiff that the capital stock of a corporation is a trust-fund for the payment of its creditors; that it cannot lawfully be returned to the subscribers, or divided among them, except upon the final winding up of the affairs of the corporation, for the purpose of ceasing business; that, even then, if corporate funds enough be not left for the payment of outstanding debts, the receiving shareholders may be compelled to refund for the benefit of creditors; that the transaction in this case is equivalent to a withdrawal by the defendant stockholder of so much from the trust-fund which is needed for the payment of

creditors, and equity will, therefore, compel him to refund the amount so withdrawn.

When it is said that the stock of a corporation is a trust-fund for the payment of its creditors, care must be taken to understand precisely what is meant by the word " *stock*." An undiscriminating application of the term sometimes begets confusion. It is said that the shareholder owns or possesses a certain portion of the stock. But does he, in fact, own or possess a part of the fund which must be held sacred to the prior claims of creditors? Does he, by converting what he possesses into cash for his own benefit, in any wise diminish that fund? The argument for the plaintiff seems to assume the affirmative, as to both these propositions. Yet neither is true.

The capital stock of a corporation is the fund which has accumulated in its coffers from the contributions of its members. It may be practically identified in the money, notes, bonds, securities, or even land-titles, wherein the contributions have been invested. It includes all claims against shareholders for their unpaid subscriptions. All these elements, or their value, to the authorized extent, represent the capital stock or working capital of the corporation, in like manner as the goods upon the merchant's shelves represent his stock in trade. They constitute the trust-fund — the *stock*. Regarded in this character, as first subject to the claims of creditors, the shareholder owns not a dollar of it. He owns no stock. What he owns is simply a right or share in the proceeds or profits of the stock, proportioned to the amount of his contribution, together with an ultimate right to receive back his contribution, or so much as may remain thereof, upon the dissolution or closing up of the corporation. When we thus distinguish between what the shareholder holds, on the one hand, and the stock, rightly so called, on the other, the principles which must control the present controversy become easy of application.

Suppose the shareholder sells and transfers the share, or

right, held by him to another, for a money consideration? If the transferee be the corporation itself, it is obvious that the money paid is only so much of the shareholder's original contribution returned to him.    In other words, the capital stock itself is diminished to that extent.    The corporation surrenders a part of the very fund upon which its creditors have relied for the security of their claims, and gets literally nothing in return.    A certain claim upon its future dividends is extinguished; but with that extinction is destroyed, at the same time, the corresponding quota of working capital which was to help create them.    The transaction is, in this aspect, a violation of trust, and equity, in a proper case, will annul it.    But suppose the purchaser be an outside party.    How then can the transaction have the least shadow of influence upon the capital stock, or trust-fund? It is not of the smallest consequence to the corporation, or its creditors, whether the price paid be great or little.    The effect will be the same, whether the seller has received an enormous price, or has given his share away for nothing. Although it will be said that he has sold his "stock," yet he has in fact parted with absolutely nothing, and has destroyed nothing, upon which any creditor of the corporation might depend as a trust security in his behalf.    Nor is any dereliction chargeable against the corporation; for it was no party to the proceeding.

Such was the real nature of the transaction in the present case.    The defendant, a shareholder in the St. Louis Mutual Life Insurance Company, sold and transferred his shares, or rights, to the Mound City Life Insurance Company, a corporation competent to buy them.    The consideration received was an equal number of shares in the Mound City. Whether this was sufficient, or was absolutely valueless, as a price paid, could be of no earthly consequence to the St. Louis, or to its creditors, or to the present plaintiff, representing both.    The right to possible future dividends and ultimate returns from the capital stock was simply trans-

ferred from the defendant to the Mound City Company; the only effect upon the St. Louis Mutual being a change in the party to whom the account must be rendered. So far as the St. Louis Mutual, or its creditors, had any interest in it, this was the end of the whole business. All that followed was foreign to such interests, and was *res inter alios acta*. The Mound City purchased from the defendant his shares, newly acquired, in the stock of that corporation. The transaction may have been open to objections. But the objection, if any, should come from creditors of the same corporation, and have no concern with the present controversy.

It is alleged, however, that the money which was paid to the defendant for his shares in the Mound City was drawn from the assets of the St. Louis Mutual, which had been turned over to the Mound City. Let the fact be admitted. No case of fraud, collusion, or misappropriation is stated, which would require a court of equity to follow the fund through the hands of its successive possessors. The Mound City, by its purchase, acquired an absolute dominion over the money and other assets received, as over its own property. It would be a strange crippling of the law, which should abridge its efficacy to vest in the grantee of the corporation a dominion equally conclusive. It is not claimed that the present plaintiff could ever have identified and recovered from the Mound City the precise sum which it paid to the defendant for his shares, as an asset of the St. Louis Mutual, to which he was entitled. Why should he have any better right against the defendant, its assignee? When it is answered that, although property charged with a trust may be conveyed in fraud of the trust to an innocent purchaser in whom the title will be indefeasible, yet, if it afterwards comes back to the original trustee, the trust will again attach; this is simply introducing again the confused notion that there was an original trust attaching to the shareholder. Of course no reference is intended to such a

trust as may attach to him on account of an unpaid sub-
scription. If he has not paid up, his indebtedness stands
as the representative of the stock to that extent, and of the
trust-fund in behalf of creditors. But when he has paid
for his stock in full, there is no such trust or responsibility
belonging to him, unless by virtue of some special law im-
posing a double liability.

It is said that the assets received by the Mound City were
manifestly worth more to the purchaser than the price paid
for them in the reinsurance of the St. Louis Mutual's risks ;
that this excess of value is apparent in the additional sums
which the Mound City undertook to pay for the shares held
by the defendant and others. That thus, by "contrivance,"
as the petition alleges, the defendant and other shareholders
were indirectly paid in full for their worthless stock in the
St. Louis Mutual, out of the assets of that corporation, in
fraud of its creditors. If this were a proceeding to annul
the contract of reinsurance, the position might be well
taken. But where the validity of the contract is not ques-
tioned, the plaintiff merely claiming an interest in certain
resulting benefits, it is difficult to perceive how a court can
refuse to recognize rights which in law are absolutely
inseparable from every such contract. We are asked to
say to the defendant, "You have lawfully sold your own
property, for a lawful consideration, paid to you in money,
as the sole condition upon which you consented to part
with what you sold. Nevertheless, the money so paid you
shall not be your own ; but, by reason of an improvident,
though valid, contract made by another, you must surren-
der it to that other, for so much of indemnification." We
are aware of no principle which will permit us to consider
the question of comparative values, in a case like the
present, where the parties selling or exchanging are admitted
to have made a competent and binding contract. It is as
if A. should sell a horse for $50 to B., who agrees at the same
time to pay C. $10 for his services in promoting the bargain.

A. then sues C. for the $10, on the ground that the horse was manifestly worth $60 to B., as appears from the excess paid by him over what was received by A. The plaintiff here has no better right than this, to recover from the defendant the amount which the purchaser of the assets was willing to pay him, in addition to its undertakings made to the seller. We think that the demurrer was properly sustained.

All the judges concurring, the judgment is affirmed.